May it please the court, my name is John Muller, I represent the appellant Arthur Lothringer. This is a case that involves a summary judgment entered against Mr. Lothringer whereby the judgment was coupled with the ratification of a pre-existing federal tax debt that was originally taken by default judgment. The result of these two judgments is that Mr. Lothringer lost not only his corporate shield but also he will soon lose his homestead. The law that was recited as the basis for this summary judgment was improper for at least three reasons. Firstly, the trial court relied upon Louisiana law instead of Texas law. It included in its analysis numerous factors that do not have support under Texas common law and most importantly, the trial court relied on certain factors that are absolutely prohibited from consideration by statute in Texas. I think this case involves extraordinary circumstances but I will say that I think whenever a trial court enters a judgment as a matter of law, we should expect the court to first state and announce that law properly and correctly. And the parties agree in this case that Texas law is what applies. That law is best defined in Texas summary case . . . What was the court talking about Louisiana? Can you explain that? Yes, I can. And I think the best way to explain that is by referencing the origins of Century Hotels. The court relied upon Century Hotels, U.S. v. Century Hotels, 1992, to identify the factors that were pertinent to their analysis. Century Hotels in turn relies on factors, twelve factors in particular, that were developed in John T., U.S. v. John T. Chemicals, a 1985 case. And John T. Chemicals was actually a parent subsidiary case but it was in fact governed by Texas law. The Century Hotels was a Louisiana case, it was governed by Louisiana alter ego law, but it was not a parent subsidiary case. I guess my problem . . . did people tell the district court because this is in the Western District of Texas, a very experienced judge who was on the Texas Supreme Court and so why . . . if you said, oh, you need to use Texas not . . . and we know Castleberry real well and whether or not it's followed through and statutory reasons, I'm not trying to rule on that, but . . . so I don't understand why there was this hang up. Yeah, why wasn't the court informed I think was one of those questions too. And I think the answer to that is because we have a dangerous precedent here. We have two different sets of standards we're looking at. You can look at Zahara Spiritual Trust or . . . Did anybody say wait, don't use Century all the way out because it uses Louisiana law? Did anybody raise that argument to the district court? I don't believe so. I wasn't the trial attorney who handled this, but I think what the attorney who did . . . what the attorney who handled the case did was told the court that the movement had not satisfied their initial burden under Rule 56 to bring a proper motion for summary judgment. Remember, Mr. Woffinger as the non-movement and the respondent had no duty at all to respond whatsoever to the government's motion. Rather, he could rely upon the government's failure to first bring forth a motion that satisfied the dictates of receiving a summary judgment. Before you can show a court that you have the factual basis sufficient to get past a jury and not present facts to a jury, it's implicit that you have to first define the law. You have to know what target to shoot at. If you don't define the law properly, what you have . . . you have the problem you have in this case, which is that you say all the facts and circumstances and you start making up factors that have no basis in Texas law. Let me ask you something, Mr. Miller. I mean, Castleberry didn't . . . the factors it lists are not exclusive factors, are they? I mean, it says the court can consider all surrounding circumstances and if you see a practice in a case from another court that looks like it's an appropriate factor to consider in the connection between the entity and the individual, why can't a court consider that? I love that question. That's a wonderful question. So, it is true, the factors are non-exclusive. So what happened in Castleberry is the court first announces the legal standards, such unity between the individual and the corporation that the separate existence has ceased. The very next sentence is the focus. The Texas Supreme Court says, what is our focus in this analysis? We have to focus on the totality of the transactions between the individual and the corporation. Right? That's what the government doesn't like here. They want to go to all the facts and circumstances. That's code for make up whatever you want. If you have to focus on the totality of the transactions between the individual and the corporation, you can consider those non-exclusive factors within that context. What you're really talking about is kind of doing a mini audit. Right? If you want to deem that an individual is the same as their company, you're on some level going to have to look under the hood and see, well, how many transactions are they? How big were they? And how many of those are improper? It's got to be one or more than two. And so, all the facts and circumstances, the standard used by this court is really coming from 1985, from John T. Chemicals. And in that court, you have to understand, and you can read this in Castlebury, nobody cites the cases on alter ego prior to 86 in Texas. Right? We had a problem with the courts referring to various alter ego, I'm sorry, various veil piercing theories as if they were all the same, sham, perjury, the problem's same. And so, what the Texas Supreme Court said here is, there are six distinct veil piercing theories that we know of under Texas law. And stop convoluting them. Stop picking factors from one and using them in another. And then it goes on to state, and when you say alter ego, we mean this. This is the focus of the conversation. And so, by going back to John T. Chemicals from 1985, what you've really done is effectuated an end run around Castlebury. And in fact, I think that Castlebury was actually entered because of courts like John T. that were saying, hey, Texas, you have these nebulous standards. If you actually look at John T., the court says, in the absence of a coherent doctrinal basis for alter ego in Texas, we are going to look to, there's no litmus test. We are going to look to all the facts and circumstances. Because the court didn't clarify that litmus test. But we have it now. The litmus test is Castlebury. It's the law. Pardon me. So, you say those are exclusive factors you can look at? It's not exclusive factors, but you have to apply those factors to the totality of the transactions between the individual and the company. So, you have to look at the transactions. You can't go over here and say, oh, look, Mr. Walfringer committed a crime or purportedly committed a crime. What factor did they consider that was not appropriate? Well, I would submit to you all of them. The one thing that they did, let's go through this briefly. The first factor that they considered was whether a relationship existed between the individual and the corporation. Think of that. That's wildly overbroad. One could say that an individual always has a relationship with a corporation. Castlebury would allow you to look at the degree of ownership and control the individual maintains over the corporation, right? But whether a relationship exists between the individual and the corporation is almost nonsensical. Whether the individual enjoyed benefits of the corporation, no authority under Texas law, that you could check the box every single time if you have a stockholder. The third factor becomes more interesting, and I think this goes to your point. The court examined whether the individual exercised dominion and control over the corporation. Well, dominion and control wasn't a factor that was considered in Jante. It was actually the underlying issue for which the court developed a 12-point test. And so we get, because we're making up the rules, you're now in a logical loop. How is Mr. Laughlinter to respond to this factor, which we now know is governed by a 12-point test under Louisiana law? The next two factors, and I think this is the crux of our argument, Your Honor, is the two other factors that were considered, or two of the nine, were whether the corporation observed corporate formalities and whether the corporation maintained books and records. Now, this is a common example of splitting one factor into two, because failing to maintain books and records is kind of a quintessential example of a failure to observe corporate formalities. But by a legislative amendment in 1983 after Castlebury, the court, for reasons, found that that particular factor, that he says non-exclusive factors, but there's one we know you can't use anymore, and that is adherence to corporate formalities, right? That was a product of so many businesses that are solely owned, don't have year-end meetings, don't do resolutions, and yet sole ownership is insufficient to find alter ego. And so there was some abuse there. But since the court is referring back to John T. and doing an end round around Castlebury, they've now put two factors in that are overtly illegal to consider. And think about this, what the court based its ruling on in the end was, well, we amalgamate the facts that were found and we say it's enough. But if you were to remove the court's finding on observing corporate formalities and keeping books and records, would that have been enough to entitle the movements to summary judgment? Yeah, if you did, I remember somebody argued that that statute you're referring to only applied in contract cases. I'm glad you brought that up too. So really the distinction there is what I'm going to say, the difference between what I call an A-2 case and an A-3 case. If you look at the statute, if you look at Texas Business Organization Codes Chapter 22-223, it has three subsections. If you look at subsection two, it begins with the words for contractual obligations. And it goes on from there to say you can't use any veil-piercing theory when you're talking about contracts, right? It makes sense. You can't . . . when you sign a contract, you know who you're dealing with. And now you can't tape some stranger to the side. But this is an A-3 case. An A-3 case, the A-3, section A-3, starts with the words for any obligations. The word contractual is now gone. And this now means cases that are contract or otherwise. And it says for all obligations, you can no longer consider an adherence or a failure to adhere to corporate formalities as a basis for, again, any type of veil-piercing theory. They threw it out the window. So it is an astute observation, but this is an A-3 case. To proceed, here are some other factors I think the court relied on that were just . . . had no bearing and no relationship to the proper Texas law. And this goes to the totality of the transactions. Item six and item seven were whether the corporation and the individual commingled funds. And then the seventh was whether the individual transferred assets, property, or funds to the corporation, and vice versa, logical duplicates. Again, that's wildly overbroad. It suggests that one instance of mixed misconduct would be sufficient to check the box not once, but twice. The proper analysis should have been whether there was separate and corporate individual property based upon the total dealings of the corporation and the individual. You can kind of see that in the Noah Spice case where the family had set up a whole ruse from the beginning where the father's bills were paid forever and the son got to live in the garden district for free. The entire thing was a ruse. But in circumstances like Mr. Loefflinger's where he has a legitimate business that's doing large volumes of brokerage of used cars, taking on financing, you can't just say the entire business is a sham. You have to look to the totality of the circumstances. I'd like to remind the court that the trial court found that Mr. Loefflinger, which argued both in the tax case and this case, that Mr. Loefflinger's business had done over $17 million worth of revenue in a single year in 2006. Yet ultimately, after scrutinizing the transactions, they found only two. They found a check in the amount of approximately $400 and a check in the amount of approximately $800. They had perfectly sufficient explanations, but the government didn't believe them. So two checks in $1,200 laid against the backdrop of a company that did $17 million in one year. That is not a sufficient basis to find alter ego under Texas law. In addition to getting the law incorrect, the court on numerous occasions didn't follow procedural dictates of Rule 56. As more appropriately briefed in our briefing, it regularly relied upon facts that were inappropriate. It weighed the evidence. It made credibility determinations repeatedly, and it viewed the facts in a light that was most favorable to the movement. For these reasons, we're asking the court to reverse and remand, and I'll reserve the remainder of my time. Thank you. Thank you. Ms. Bradley. Good morning. May it please the court, the district court here correctly applied Texas law. In the district court, counsel for the appellate, Mr. Lothringer, never made this argument at all. It's abundantly clear looking at the court's pretty thorough opinion, citing Castleberry, citing to this court's president that in the case of a determination of alter ego, he looked to state law, and here that state law was Texas. This court on multiple occasions has caused to examine the factors to use in an alter ego determination. In fact, it was twenty years ago, I was before the court as counsel for the government in Century Hotels, and in that case, the court held that the district court applied the correct factors, and here we submit as we explain at length in our brief that the court considered appropriate factors. Here, yes, the case was decided on summary judgment. Mr. Lothringer never contested the amount of the liability for pickups. That was undisputed, and to the extent that counsel this morning is referencing the tax liability for 2006, that was decided by the tax court. It's res judicata. We don't even need to discuss that. Here the court, again, examined the totality of the circumstances. This court has recognized that there's no, quote, litmus test. This court in Century Hotels articulated fifteen factors. In John T., it articulated twelve. There's some overlap. Again, it doesn't really matter whether it was a subsidiary and parent corporation. The whole facts and circumstances just show whether or not the one entity was really a sham, and that here the individual plainly used the corporation for his personal benefit. It's really hard to prove that something's an alter ego, a sham entity, in Texas law. It's meant to be very difficult. Can you please give us what you believe are the proper pieces of evidence and proper factors that you think establish it in this case? Yes, Judge Elrod. In here, there were six factors that Mr. Lutheran Jr. didn't even contest in the district court. Well, I'm not talking about whether something's preserved right now. I'm talking about, is there an adequate record to support alter ego in this case? Let's go through the factors that you believe are appropriate factors and what the evidence is that establishes alter ego. Okay. In this case, the government summary judgment motion was supported with, I believe it was twenty-seven different exhibits, and those exhibits established, and again, the appellant didn't contest that he was the only shareholder, that he was the owner of pickups, that he organized it. He, in fact, in the trial court conceded that he exercised dominion and control over pickups. He was the one that wrote checks, he paid bills, he took care of those day-to-day events with the company. He also failed to observe some corporate formalities, and what the district court specifically cited for that was here again, as a matter of law, pickups was required to file and pay taxes, file taxes returns and to pay taxes, and by the same token, was required to file federal income tax returns, corporate returns, and also required to file and pay employment taxes, and in this case, again, the 2006 year, that liability's been fixed. Here, there were no further federal income tax returns for the years 2008 through 2011, when the Texas state government revoked pickups license and corporate charter. I believe Mr. Loessinger testified that the corporation ceased to exist in May of 2011. Was there any evidence that he used the corporation like a piggy bank and he just got into it and used money like it was his own? Judge Davis, that's exactly what I was going to say. Here again, Mr. Loessinger admitted he had no personal bank account. On the other hand, pickups did have a bank account with International Bank of Commerce, and there's no dispute that he, in fact, was writing checks to his wife, who was not an employee, was not on the company payroll. He was writing her checks, and she was going ahead and paying for personal expenses, such as groceries, Home Depot. There's also evidence here that wasn't disputed, that Mr. Loessinger assumed a $50-some-thousand debt of pickups. He also loaned almost $800,000 to pickups, and pickups never, at least as of the time of this case, never repaid that. There's other evidence that was in the record with respect to two loans from two separate credit unions. The amounts weren't really large, but the point's still the same, that the distinction between Mr. Loessinger and pickups was quite muddled. Here again, Mr. Loessinger did not cooperate at all with the government to the extent we were seeking to collect his liabilities here. In fact, Mr. Loessinger, we had to get bank records. We had to summons them. In Mr. Loessinger's interview with the revenue officer who was assigned to do the collection, he was less than forthright in providing the government with information. During the years at issue, I believe it was 2009 and 2010, pickups' own bank records showed that he took in more than $2 million, and Mr. Loessinger, when asked what happened to pickups' assets when the company closed in May 2011, he said, I don't know. I think the record here that the government presented on its summary judgment motion, and again with the 27 exhibits, including the declaration of the revenue officer who was assigned to collect this case, overwhelmingly shows that in these facts and circumstances and on this record that Mr. Loessinger is and was the alter ego of pickups. To the extent they filed an opposition to our motion, they raised some arguments that hadn't been raised below. And again, to the extent they were required on summary judgment to come forward with affidavits or other documentation to contest the government's motion, they came forward again with another deposition of Mr. Loessinger and some of the facts that he put forward there, like we didn't have books and records. Well, it contradicted his earlier answers to the government's interrogatories and his prior deposition. Same thing to the extent he submitted an affidavit of his brother Michael in an attempt to rebut the government's evidence. Again, Michael's affidavit rebutted an earlier deposition. They came forward with a promissory note at the last moment, no explanation why that had not been produced anywhere previously. And as the government had pointed out, that promissory note was woefully inadequate. It didn't have, I believe it was, it didn't have the date, the amount, the terms. So here the district court made no credibility determinations or weighed the evidence. The fact of the matter is the law is, you can't come forward with a deposition or affidavit that contradicts an earlier one unless you have some explanation that there was some change in the facts and circumstances in law. And here it wasn't. And in fact here when the appellant submitted a motion to reconsider, again the district court was pretty exhaustive and quite frankly rejected their argument that they had raised any issue of material fact. Would you address counsel's argument that the court wasn't authorized to consider the absence of formalities, of meanings, and, you know, the... Well, here I think the records plainly, the government did point out in its pleadings that here there was only one corporate minute, something wasn't signed, but at bottom, and maybe it was the court and the government having a little broader interpretation of, and maybe formalities isn't the right term, but the fact of, again, they were legally required, they had the income, they had the employees, they were required to file those taxes returns and to pay that tax, and the same thing with respect to filing their federal income tax returns and paying taxes, and here they didn't. So whether or not formalities is the appropriate term, I think it's quite plain here that these were legal obligations to file those returns, to pay their employment taxes, and here again there's no dispute as to those liabilities, and the liability is, you know, it was $1.8 million, and interest has been running on that. And again, at numerous points they could have come forward, they had that money in the bank account in 2009 and 2010, which would have paid their liability. They did not voluntarily pay their liability, and the IRS was put in the position of having to go ahead and institute proceedings to collect their liability, which again is admittedly due and owing. So the government would, in conclusion, just say that the district court here did an exhaustive job in its opinion and in its order denying their motion for reconsideration, tied up any loose ends, and we ask that this court affirm the district court's grant of summary judgment to the government. Thank you. Thank you. I'm going to take time for rebuttal. May it please the court. I'm going to move quickly here, speaking first to the factual issues that were presented. On one hand, Mr. Rothinger has no bank account, thereby suggesting he must be doing something improper. On the other hand, he has wrongfully written a check to his wife, wrongfully distributed checks to his wife. Do these facts suggest to you that perhaps Mrs. Rothinger keeps the family's finances? I think the counsel actually admitted that she needed the check to pay for personal expenses. Companies make distributions. They do so, and it's not an indicia of alter ego. If Mr. Rothinger doesn't have his own personal account, he has to make distributions by writing checks to his wife. Did he pay himself a salary out of the company? No, I think he just made periodic distributions. But when he did so, he had to make them to his wife. He didn't have a personal check account to write to himself. So he would just write the money to his wife, and then his wife would go buy the groceries and take care of the family affairs. She didn't trust him to keep a bank account, I guess. But it's clear that the facts are that he made distributions properly, and he did it from his company, and there's nothing wrong with that. There's nothing wrong with . . . I mean, failing to file a tax return is indicia that you owe tax. It is not indicia that you're an alter ego, right? That is a factor that's being fabricated as . . . Explicitly following corporate formalities and failing to follow corporate formalities was stated in the court's order as a basis for giving judgment in this case. It then said that considering the sum of all the facts that were undisputed, that particular issue was ruled in favor of summary judgment. If you remove corporate formalities from the court's analysis, what would the result have been as to Mr. Wafflinger's brother's affidavit? And this is interesting. It shows that the court did, in fact, make credibility determinations. In fact, it explicitly made a credibility determination as to Mr. Wafflinger's brother's testimony in its opinion. It ruled that it was a sham affidavit, sua sponte, without motion from the government. And what did Mr. Wafflinger's brother say? He said, I gave money to pickups who you know who . . . I gave money to my brother who you know who was pickups. And one might argue that Mr. Wafflinger's brother is not educated in the principles of agency. But that was true, right? That his brother was, in fact, an agent of pickups. And there is nothing wrong with getting a loan from your brother. There are many businesses that are self-financed or financed through family members. Yet the court explicitly said that he was less sure about Mr. Wafflinger's testimony and made a credibility determination. I'll respond to a few of the legal points as well. I would say as to the waiver issue, you can't waive the law. And you can't waive the dictates of Rule 56. I would direct your attention to the Celotex v. Cottrell, 477 U.S. 7-317, and the Noah Spice case, which both state that on a motion for summary judgment, it is the movement's initial burden to come forward with the law and the facts sufficient to support their case and that there is no duty to respond whatsoever. In other words, the non-movement can rely upon the movement's failures. It is true that in the Century Hotels case that the court was deemed to have gleaned the correct factors from John T. However, that was a Louisiana case, right? The whole gleaning of factors analysis was because we were taking Texas law and then adapting it to Louisiana law. Why then do so in reverse? Why go to Century Hotels? Why not go directly to John T. Or better yet, why not just state the law as required in Century Hotels? I'm sorry, in Castleburg. And this court has done that on many occasions. It's done it in its case, Western Horizontal Drilling v. Jonnet, referring to Castleburg. It has done so in its Zahara Family Trust case where it actually recites to Castleburg and the proper factors that should be enumerated in a Texas alter ego analysis. And so by conducting this end run by and through Century Hotels, we end up with two legal standards. And this is exactly the problem that Castleburg was sought to cure, right? We cannot have two nebulous standards that apply to Texas alter ego law. Otherwise, everyone's going to start taping alter ego claims to all their petitions moving forward like we had in 1985. For these reasons, I would state that the government very clearly did not fulfill their burden to present a motion and evidence that would have allowed it to take judgment as a matter of law. And I would ask that the court please reverse. Thank you. We have your argument in this case as submitted.